UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| JAMES BRITTINGHAM | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 2:13CV00089 ERW |
|  | ) |  |
| STACIE GOVE-ORTMEYER, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Stacie Gove-Ortmeyer's Motion for Summary Judgment [ECF No. 80].

### I. BACKGROUND

Plaintiff James Brittingham ("Plaintiff") filed his Third Amended Complaint ("Complaint") against Defendant Stacie Gove-Ortmeyer ("Defendant") on December 2, 2014. [ECF No. 42]. In this Complaint, Plaintiff asserts eleven counts against Defendant Gove-Ortmeyer, in her individual capacity. *Id*. Among the counts alleged are seven arising under 42 U.S.C. § 1983, as well as an additional four counts asserted for violations of Missouri state law. *Id.* These eleven counts are based on actions taken or omitted by Defendant in relation to her investigation and submission of two probable cause statements to prosecute Plaintiff for 1) failure to pay sales tax, with intent to defraud, in violation of Missouri Revised Statute § 144.080, and punishable under Missouri Revised Statute § 144.480, and 2) failure to pay withholding tax in violation of Missouri Revised Statute § 143.221, and punishable under Missouri Revised Statute § 144.480.

Defendant filed the instant summary judgment motion on December 11, 2015. [ECF No. 80]. Defendant seeks summary judgment on all eleven counts of Plaintiff's Complaint on the basis she acted properly in conducting her investigation and in certifying a probable cause statement to

1

prosecute Plaintiff, and no constitutional right was violated in so doing. Alternatively, Defendant asserts qualified immunity prohibits the suit.

   A. *Uncontroverted Facts*

Both Plaintiff and Defendant are Missouri residents. Defendant was employed as an investigator in the Criminal Tax Investigation Bureau of the Missouri Department of Revenue ("DOR") at the time of the events alleged in Plaintiff's Complaint. In this capacity, Defendant conducted an investigation in regards to the non-payment of sales and withholding taxes by Bentz Bickhaus Motors, d/b/a Bentz Motors ("Bentz Motors"). During the course of Defendant's investigation, Plaintiff was the majority owner of Bentz Motors, with an 85% ownership stake. Roger Bickhaus, who was fired by Plaintiff in 2008, held a 15% ownership stake. Mr. Bickhaus's involvement with the payment of taxes is disputed, but otherwise not relevant to the criminal prosecution of Plaintiff at issue in his Complaint.

While the details of the interview are disputed, the parties agree Plaintiff was interviewed on behalf of DOR on April 17, 2009.[1] At this interview, Plaintiff stated the corporate comptroller, Sherry Frazier, was responsible for preparing, filing, and paying taxes, he was aware Bentz Motors was behind on paying taxes, and he was aware Ms. Frazier had stopped sending tax payments because there was no money in the account to do so. Defendant was unable to reach witness Sherry Frazier prior to the filing of her prosecution report.[2] As part of her investigation, Defendant obtained documents regarding Bentz Motors including the monthly sales tax and wage withholding returns. Likewise, she interviewed both Roger Bickhaus, the minority owner,

---

[1] While Plaintiff disputes the details of his interview with DOR, including whether Defendant was the investigator who interviewed him, Plaintiff does not deny he provided DOR's investigation with the information described in Defendant's Statement of Uncontroverted Material Facts, Paragraph 7, items (a)-(g).
[2] Plaintiff attempts to controvert this fact but the citations to the record he provides do not controvert it. Many of the citations do not even address the issue of whether Defendant attempted to contact Ms. Frazier. The one citation which does reference it is Plaintiff's affidavit in which he states Ms. Frazier told him she was never contacted by anyone from DOR. This is hearsay and cannot be considered by the Court on summary judgment.

and Plaintiff, both of whom provided substantially the same information about Ms. Frazier's role in handling taxes. Mr. Bickhaus denied he had any role in tax preparation.

Sherry Frazier was not an owner or director of Bentz Motors; she served in the capacity of corporate comptroller and handled tax payment and filing of taxes. Sales tax was not paid by Bentz Motors for the period March 2008, to November 2008. Likewise, withholding tax was not paid by Bentz Motors for the period March 2008, to December 2008. However, Ms. Frazier continued to submit returns for each monthly period on behalf of Bentz Motors, despite Bentz Motors' failure to remit payment. Before submitting a probable cause statement, along with her investigator's report to the prosecutor, Defendant consulted with her supervisor, James Mead, to ensure she had sufficient information for a finding of probable cause.[3] On June 23, 2010, Defendant's prosecution report, which included a statement of probable cause, a summary of interviews, and other evidence collected during her investigation, was sent to the prosecutor of Macon County, Timothy Bickhaus, recommending Plaintiff be prosecuted for failure to pay sales and withholding taxes. A felony complaint and request for warrant was filed on August 13, 2010, and Plaintiff paid $1,000 (10% of the $10,000 bond) on August 23, 2010, for his release. While Plaintiff was taken into custody, he never spent any time in jail.

In late June 2011, Defendant took the written and oral statements of Sherry Frazier, and forwarded these statements to the newest prosecuting attorney for the case, Josh Meisner. Mr. Meisner took Ms. Frazier's deposition on October 14, 2011. Ms. Frazier testified creditor GMAC had frozen funds in Bentz Motor's account, greatly inhibiting Bentz Motors' ability to pay its sales and withholding taxes. Ms. Frazier stated Plaintiff made personal injections of his own money towards the payment of bills. Additionally, Plaintiff made the final decisions on who received payment with Bentz Motors' limited funds. Other creditors were paid before taxes were

---

[3] While Plaintiff denies this fact, he does not controvert it.

paid. Nevertheless, at all times, Ms. Frazier filed timely tax returns for the sales and withholding taxes owed, regardless of the failure of Bentz Motors to remit the payments.

On January 24, 2012, Mr. Meisner filed a motion to *nolle prosequi* the criminal case against Plaintiff.

**II.     STANDARD**

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts

4

showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

### III. DISCUSSION

The first seven counts alleged by Plaintiff are based on perceived constitutional violations committed by Defendant Gove-Ortmeyer against Plaintiff in violation of 42 U.S.C. § 1983. The remaining four counts are alleged violations of Missouri state law. The Court will first address the claims regarding 42 U.S.C. § 1983.

    *A. 42 U.S.C. § 1983*

"Section 1983 provides a federal cause of action for plaintiffs to sue officials acting under color of state law for alleged deprivations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010-11 (8th Cir. 1999). A § 1983 action requires (1) the defendant acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). There is no genuine dispute of material fact Defendant was acting under color of state law when she carried out her duties to investigate Plaintiff's nonpayment of taxes on behalf of Bentz Motors, nor when she certified probable cause to prosecute Plaintiff. The determination of whether Defendant is entitled to summary judgment rests on whether there is a genuine issue of material fact which might give rise to a finding Defendant's alleged wrongdoing deprived Plaintiff of his constitutional rights.

Even in the event there is a genuine dispute of material fact Plaintiff's asserted constitutional rights were violated, a factually submissible § 1983 case remains subject to qualified immunity. The inquiry this Court must make, in determining whether Defendant may be entitled to such qualified immunity, is as follows:

> First, did the official deprive the plaintiff of a constitutional or statutory right? If not, he does not need qualified immunity, as he is not liable under § 1983. If so, we ask the second question: Was that right so clearly established at the time that a reasonable official would have understood that his conduct was unlawful under the circumstances? . . . If the right was not clearly established, then the officer is protected by qualified immunity.

*Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Moreover, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

In order for Plaintiff to survive this summary judgment motion, with respect to any of Counts I-VII, Plaintiff's claimed constitutional right must exist and he must establish he was deprived of such right, or there is a genuine dispute of material fact as to whether Plaintiff was deprived of such right. Even if Plaintiff establishes his § 1983 claim, Defendant may be entitled to qualified immunity if the constitutional right was not clearly established at the time it was violated.

Plaintiff's first seven counts of the eleven-count Complaint allege Defendant violated differing constitutional rights grounded in select clauses of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. For the purposes of this analysis, the Court analyzes the § 1983 claims categorically, beginning with the Counts having their primary basis in the Fourth Amendment's probable cause requirement, followed, in the next section, by those Counts based primarily on the procedural and substantive due process requirements of the Fourteenth Amendment. Because Count IV, Wrongful Arrest, and Count V, Malicious Prosecution, are each alleged on the basis of the Fourth, Sixth, and Fourteenth Amendments, the discussion of Counts IV and V overlap.

1. Claims dependent on Probable Cause

Three of Plaintiff's claims depend on whether there was probable cause to charge Plaintiff. This issue arises in Count I for Submission of a False Affidavit in violation of the Fourth Amendment, Count IV for Wrongful Arrest in violation of the Fourth, Sixth, and Fourteenth Amendment, and Count V for Malicious Prosecution in violation of the Fourth, Sixth, and Fourteenth Amendment.[4] The basis of Plaintiff's allegations is Defendant knew the information

---

[4] The Court is unclear as to Plaintiff's claim brought under the Sixth Amendment, as it has no application to Plaintiff's allegations. The Sixth Amendment of the United States Constitution states "the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." None of Plaintiff's allegations assert Plaintiff was deprived of any of these rights.

contained in her affidavit for probable cause was false or she recklessly disregarded the truth. Further, Plaintiff is alleging Defendant submitted charges to the prosecuting attorney's office without probable cause.

Plaintiff was charged with two violations, failure to pay sales tax and failure to pay employer withholding tax. Missouri Revised Statute § 144.080 requires the payment of sales tax, whereas Missouri Revised Statute § 143.221 requires payment of employer withholding tax. Noncompliance with either or both of these sections creates a punishable violation under Missouri Revised Statute § 144.480, which reads in pertinent part:

> Any person required . . . to pay any tax . . . who with intent to defraud willfully fails to pay such tax . . . at the time or times required by law, shall, in addition to other penalties provided by law and, upon conviction thereof, be fined not more than ten thousand dollars, or be imprisoned in the county jail for not more than one year or by not less than two nor more than five years in the state penitentiary or by both fine and imprisonment together with the cost of prosecution.

Mo. Rev. Stat. § 144.480.

Plaintiff's principal argument with respect to whether there was sufficient probable cause under these statutes for his arrest and prosecution is he did not possess the intent to defraud DOR and Defendant knew this but did not include it in her statements to the prosecutor. Plaintiff contends he was unable to pay tax obligations on behalf of Bentz Motors. Intent is a factual question typically defined by circumstantial evidence, and is treated as such by Missouri law. *See State v. Sinner*, 779 S.W.2d 690, 694 (Mo. Ct. App. 1989). As a matter of federal law, probable cause is a requirement of the Fourth Amendment of the U.S. Constitution. The text of the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

There is no dispute Plaintiff has a constitutional right under the Fourth Amendment to be free from arrest and prosecution undertaken without a basis in probable cause. This Court must determine whether the addition of Plaintiff's inability to pay taxes defeats Defendant's ability to establish probable cause and whether Defendant intentionally submitted false information to the prosecutor and Circuit Court in her affidavit establishing probable cause. In order to successfully prove his claims, Plaintiff must show (1) Defendant deliberately or recklessly included a false statement, or omitted a truthful statement from the affidavit; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *Dowell v. Lincoln Cty., Mo.*, 762 F.3d 770, 777 (8th Cir. 2014). Nevertheless, Defendant may be entitled to qualified immunity if there is "merely *arguable* probable cause," which is a mistaken but objectively reasonable belief the suspect committed a criminal offense. *Id.* Probable cause exists at the time of arrest when "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996). However, there is not liability for false arrest simply because the innocence of the suspect is later proven. *Id.*

As stated *supra,* Plaintiff does not dispute he did not pay withholding taxes and sales taxes. He asserts he informed DOR investigators he could not pay the taxes. He also asserts he provided them with the contact information of Ms. Frazier who would also state he was unable to pay the taxes owed. While criminal law presumes the accused to be innocent until proven guilty,

9

it does not require a DOR investigator or a prosecutor to take the accused at their word they are innocent. There is evidence in the record to support Defendant's finding of probable cause and to support her decision not to believe Plaintiff's assertion he did not intend to defraud DOR.

Because Plaintiff's claims are premised on Defendant's alleged failure to submit accurate information to the prosecutor, a review of what Defendant did submit is necessary. On June 23, 2010, Managing Counsel of DOR submitted a prosecution report with exhibits prepared by Defendant to Timothy Bickhaus. This included a probable cause statement which stated Plaintiff committed the offenses of failure to pay sales tax with intent to defraud on a series of dates beginning in April 2008, until December 2008. It further stated the information which led Defendant to believe Plaintiff committed this offense was his failure to pay withholding tax for certain monthly periods in 2008. A second probable cause statement contained the same information but for failure to pay withholding tax. Also included in the prosecution report were summaries of the interview of Mr. Brittingham, including his statements Ms. Frazier had stopped paying taxes because there was no money in the account to do so and his statement he never intended to defraud DOR. The remaining documents in the report include records submitted by Bentz Motors to DOR relating to the taxes, a summary of an interview with Roger Bickhaus, among others.

Defendant knew Ms. Frazier had filed all of the tax documents related to employee withholding tax and sales tax because those documents had been obtained as part of Defendant's investigation. The inclusion of these returns in the report, which was submitted to the initial prosecutor, Mr. Bickhaus, as an exhibit to Defendant's probable cause statement, establishes Bentz Motors knew the exact amounts it owed in withholding and sales taxes. As the reports indicated, Bentz Motors was collecting sales and employee withholding tax. In Plaintiff's

interview, he not only acknowledged he was aware the taxes had not been paid, but he made no attempt to confirm the whereabouts of these moneys, which he knew were withheld and collected from employees and customers in trust and such funds should be used for their lawful purposes. This information was all included in Defendant's report to the prosecutor. The Court is unsure what additional information Plaintiff expects Defendant to have included in her report as she included his statements he never intended to defraud DOR. Defendant's lack of belief in Plaintiff's protestations of innocence does not establish a reckless disregard for the truth as Plaintiff claims. Law enforcement officers are often confronted with individuals who claim to be innocent but are not.

To determine if Defendant failed to include material information in her affidavit for probable cause, the Court must determine if probable cause still exists when the information is included. *Dowell*, 762 F.3d at 777. In Plaintiff's case, the Court finds probable cause would exist, even with the addition to the report and statement of Plaintiff's inability to pay the taxes. In so determining, the Court finds the following discussion in a case from the Eastern District of Missouri Court of Appeals regarding "intent to defraud," with respect to income taxes, to be relevant:

> "[I]ntent" is a fact, which, more often than not, must be and is proved by circumstantial evidence. Proof that a taxpayer's income triggered the statutory duty to pay Missouri's income tax, § 143.481(1),3 supports the inference that the taxpayer knew he had that affirmative duty. Given these facts, additional proof showing the taxpayer failed to file a tax return, despite knowledge of his duty to do so, supports the inference the taxpayer made a conscious choice not to file the return. Those facts plus proof that the taxpayer realized he actually owed taxes, support the further inference the taxpayer made the conscious choice not to file a tax return for the purpose of depriving the state of its lawful right to the taxes due. And, the basis of fraud is depriving someone of his lawful right, interest or property by fraudulent means.

*Sinner*, 779 S.W.2d at 694. Here, based on the totality of the circumstances, even the addition of Plaintiff's inability to pay taxes would not negate a reasonable belief Plaintiff knew Bentz Motors owed the taxes; as majority owner, Plaintiff had a responsibility for the tax liability; Plaintiff had withheld the tax money from his employees on their trust it would be paid over to the state towards their income taxes, and Plaintiff had likewise collected sales tax from customers which was owed to the State of Missouri; and knowing of the obligation and nonpayment of taxes, Plaintiff continued to authorize returns to be filed without remittance and without any attempt to contact DOR. There was sufficient basis for Defendant to entertain a reasonable belief Plaintiff had consciously chosen to disregard his duty and had violated the law. Probable cause is sufficiently established for failure to pay taxes with intent to defraud.

Accordingly, because there was probable cause to charge Plaintiff with violations for failure to pay taxes with intent to defraud, Defendant is entitled to summary judgment on Counts I, IV, and V of Plaintiff's Complaint. Defendant did not include false information in her probable cause statement nor did she recklessly disregard the truth or file a false, misleading, incorrect and incomplete affidavit.

2. Due Process Claims Under the Fourteenth Amendment

Plaintiff's remaining § 1983 claims consist of Count II, Suppression of Exculpatory Evidence in violation of the Fourteenth Amendment, Count III, Reckless or Intentional Failure to Investigate in violation of the Fourteenth Amendment, Count VI, Wrongful Detention in violation of the Fifth and Fourteenth Amendments, and Count VII, Conspiracy in violation of the Fifth and Fourteenth Amendments. The claims brought pursuant to the Fifth Amendment can be immediately dismissed. "The Fifth Amendment's Due Process Clause applies only to the federal government and [Defendant] was not a federal employee." *Jones v. Slay*, 61 F. Supp. 3d 806, 821

(E.D. Mo. 2014) (citing *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir.2010)). Accordingly, Plaintiff cannot prevail to the extent his claims are based on the Fifth Amendment. This Court does not re-address Plaintiff's Count IV, Wrongful Arrest, based on the Sixth and Fourteenth Amendments, nor does this Court re-address Plaintiff 's Count V, Malicious Prosecution, based on the Sixth and Fourteenth Amendments, because there is no due process violation for either of these causes of action, because Plaintiff was arrested and prosecuted on the basis of adequate probable cause, and the only alleged procedural defects under the Sixth and Fourteenth Amendments raised by Plaintiff are the failure to adequately allege probable cause. *See supra*. No deprivation of constitutional rights may be found for these claims.

The Court turns first to Plaintiff's Count VI claim, Wrongful Detention, because of its similarity to Count IV and because it is based on the same facts which were relevant to the Court's discussion of probable cause *supra*. Plaintiff alleges he was held in violation of the due process and equal protection clauses of the Fourteenth Amendment. It is unclear on what basis Plaintiff alleges an equal protection violation and the Court does not address it here, because Plaintiff has not alleged he is part of a protected class which would make such an analysis appropriate. Therefore, there can be no violation of equal protection. Plaintiff's due process claim is he was arrested and detained without due process of law. On the same analysis as applied above to Counts IV and V, there is no wrongful detention where Plaintiff was arrested and detained on the basis of probable cause. *See Giordano v. Lee*, 434 F.2d 1227, 1230 (8th Cir. 1970). Accordingly, Defendant is entitled to summary judgment, as a matter of law, on Plaintiff's Count VI, Wrongful Detention.

Similarly, Plaintiff's Count VII claim, Conspiracy, must fail. To prove a 42 U.S.C. § 1983 conspiracy claim, Plaintiff would need to be able to prove: (1) Defendant conspired with others to deprive him of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured him (Plaintiff ). *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.*

Plaintiff is unable to prove the deprivation of a constitutional right or a conspiracy. Defendant's role in Plaintiff's prosecution was solely to investigate him as owner of Bentz Motors and to make a probable cause statement, and Defendant made such statement on the basis of probable cause. Her involvement in the case concluded before any of the three prosecutors began work on the case, and there is no basis on the record that any of the alleged co-conspirators, which Plaintiff does not name in his Complaint, or Defendant acted unlawfully before, during, or after Defendant's involvement in the case. Plaintiff makes no attempt to prove the conduct of the other alleged co-conspirators, and Defendant's own conduct in certifying probable cause has already been addressed. Accordingly, Defendant is entitled to summary judgment against Plaintiff on Count VII, Conspiracy.

Plaintiff's remaining § 1983 claims are Count II, Suppression of Exculpatory Evidence, and Count III, Reckless or Intentional Failure to Investigate. Plaintiff alleges a procedural due process violation in support of Count II, and a substantive due process violation in support of Count III. Essentially, both claims assert Defendant intentionally, and in bad faith, suppressed the exculpatory evidence provided by Plaintiff regarding Bentz Motors inability to pay the taxes

owed, or alternatively, Defendant failed to investigate these allegedly exculpatory facts further through successful contact with witness Sherry Frazier.

With regard to Plaintiff's procedural due process claim alleging Defendant suppressed exculpatory evidence, the facts of this case are not sufficient to support a procedural due process claim as a matter of law. The Court finds the following discussion of *Brady v. Maryland*, 373 U.S. 83 (1963) to be highly relevant:

> "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of prosecution." (Citation omitted). Brady's protections extend to actions of investigating officers, but "an investigating officer's failure to preserve evidence potentially useful to the accused or their failure to disclose such evidence does not constitute a denial of due process in the absence of bad faith." (Citation omitted). "[T]he recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor intended to deprive the defendant of a fair trial." (Citation omitted). "Consequently, to be viable, [a plaintiff's] claim must allege bad faith to implicate a clearly established right under Brady." (Citation omitted). Brady "does not require the plaintiff to show that the jury in his criminal trial would have acquitted him or that he was innocent." (Citation omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Jones*, 61 F. Supp. 3d at 822-23. The irrefutable facts in this case support Defendant did not suppress exculpatory evidence. The fundamental insufficiency of Plaintiff's claim is Defendant could not have suppressed information already known by Plaintiff. *United States v. Jones*, 460 F.3d 473, 479 (8th Cir. 1998) (citing *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996)). Defendant's inability to pay taxes and the circumstances which created his inability to pay are known to him. Accordingly, Defendant is entitled to summary judgment against Plaintiff on Count II, Suppression of Exculpatory Evidence.[5]

---

[5] In determining that Plaintiff Brittingham is unable to bring a procedural due process claim, due to the underlying tax prosecution never making it to a criminal trial, this Court does not comment on whether inability to pay taxes is information sufficiently material to punishment to support a procedural due process claim in another context.

The restatement of the law in *Jones v. Slay* is also dispositive with regard to Plaintiff's substantive due process claim pursuant to Count III, Reckless or Intentional Failure to Investigate:

> "To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." (Citation omitted). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (Citation omitted). Whether conduct shocks the conscience is a question of law. (Citation omitted). "In order to 'shock the conscience,' it is not enough that the government official's behavior meets the 'lowest common denominator of customary tort liability.'" (Citation omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." (Citation omitted). "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power' rise to this level." (Citation omitted).

*Jones*, 61 F. Supp. 3d at 828-29.

Plaintiff's Count III claim accordingly fails, because he does not establish Defendant's conduct shocks the conscience. Importantly, Plaintiff does not dispute he informed Defendant he was aware of the nonpayment of taxes. Likewise, Defendant was informed by Plaintiff of all relevant information he expected witness Sherry Frazier would provide to Defendant's investigation. Nothing in Defendant's report or probable cause statement was untrue or purposefully and falsely calculated for the purposes of causing a prosecution against Plaintiff where none was warranted. Additionally, even when the Court does an analysis of probable cause with the information provided by Ms. Frazier in her interview, there is still probable cause to charge Plaintiff. In fact, the information from Ms. Frazier further supports a finding of probable cause because she stated Plaintiff chose to pay other bills rather than the taxes. Defendant acted appropriately in her investigation. Even if Defendant should have interviewed Ms. Frazier prior to submitting her prosecution report, this is not so egregious that it shocks the conscience or constitutes bad faith. Defendant is entitled to summary judgment against Plaintiff

on Count III, Reckless or Intentional Failure to Investigate, and as to all of Plaintiff's § 1983 claims.

Because Plaintiff has failed to allege a deprivation of his constitutional rights as to any of Counts I-VII, the Court need not reach the question of qualified immunity where no violation of § 1983 has occurred. Only Plaintiff's Missouri state law claims remain for disposition.

### B. Missouri State Law Claims

Plaintiff's remaining four claims, brought under Missouri state law are as follows: Count VIII, False Arrest, Count IX, Malicious Prosecution, Count X, Abuse of Process; and Count XI, Intentional Infliction of Emotional Distress. The Court need not examine the facts as they apply to the elements of each of these four claims, however, because the Court finds Defendant has official immunity from these state law claims pursuant to Missouri law.

> Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. (Citation omitted). Whether an act is discretionary or ministerial depends on the "degree of reason and judgment required" to perform the act. (Citation omitted). An act is discretionary when it requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued."

*Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. Banc 2006).[6] Defendant exercised the discretion required of her position when she conducted her investigation and made a determination there was sufficient basis for probable cause against Plaintiff. Thus, she is entitled to official immunity from the state law claims, even in the event she was liable for the alleged behavior.[7] The only way for Defendant's claim of official immunity to be overcome is

---

[6] Official immunity applies to common law torts such as negligence, but it is not limited to actions claiming negligence. *See Jiang v. Porter*, No. 4:15-CV-1008 (CEJ), 2015 WL 9461490 at *4 (E.D. Mo. Dec. 28, 2015) (The Court analyzed official immunity as applied to claims of abuse of process and intentional infliction of emotional distress and ultimately denied the application of official immunity because the plaintiffs had alleged the defendants acted with malice.).

[7] This Court does not remark on whether Defendant would in fact be liable without official immunity for Plaintiff Brittingham's claims. That issue need not be reached here.

17

through a successful rebuttal, by Plaintiff, Defendant acted with malice or bad faith, defined by Missouri law as follows:

> A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.... Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another. (Citation omitted). The official immunity defense can also be overcome by showing conscious wrongdoing.

*Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005).

Plaintiff has failed to raise a genuine issue of material fact Defendant acted in any way but with good intention to fulfill her role as investigator. There is nothing on the record to suggest Defendant had singled out Plaintiff to ensure he was prosecuted with a vengeance, nor anything which would indicate conscious wrongdoing. The prospect of malice or bad faith is further negated by this Court's finding Defendant's finding of probable cause was reasonable. Defendant is entitled to summary judgment against Plaintiff on all four Missouri state law claims.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Defendant Stacie Gove-Ortmeyer's Motion for Summary Judgment [ECF No. 80] is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Defendant Stacie Gove-Ortmeyer are **DISMISSED, with prejudice**.

So Ordered this 30th day of March, 2016.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE